# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| STEVEN V. STEMPLE, ) | |
| ) | Case No. 04-77388-SCS |
| *Debtor.* ) | |
| ) | |
| WARREN JOHNSON, JR., ) | |
| ) | APN 06-7088-SCS |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| STEVEN V. STEMPLE, ) | |
| ) | Chapter 13 |
| *Defendant.* ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motions to Dismiss the Plaintiff's Complaint, which were filed separately by the Defendant, Steven V. Stemple ("Stemple"), and by the Chapter 13 Trustee in the underlying bankruptcy case, George W. Neal ("Trustee"). This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a). Upon consideration of the pleadings and memoranda submitted by each party, the Court makes the following findings of fact and conclusions of law.

## I. PROCEDURAL HISTORY

The bankruptcy case underlying this adversary proceeding has a lengthy and contested history. Stemple filed, by counsel, a voluntary petition under Chapter 13 of the Bankruptcy

Code on December 28, 2004. George W. Neal was appointed Chapter 13 Trustee. Stemple filed his original Chapter 13 Plan, as well as his Schedules and Statement of Financial Affairs, on January 11, 2005. The Section 341 Meeting of Creditors in this case was held on February 14, 2005. Amended Schedules F, G, and H, were filed by Stemple on February 24, 2005. Objections to Confirmation of the original Chapter 13 Plan were filed by the Trustee; the Internal Revenue Service; the Virginia Department of Taxation; and by creditor Warren Johnson, Jr., by counsel, the Plaintiff in the instant matter ("Johnson"). The hearing on the objections to confirmation was held on April 7, 2005, and all objections were sustained by the Court, thereby denying confirmation of the original Chapter 13 Plan. Stemple filed his First Amended Chapter 13 Plan, Amended Schedules G, H, and I, and Amended Statement of Financial Affairs on April 26, 2005.

While the Objections to Confirmation of the original Chapter 13 Plan were pending, Johnson filed Motions to Conduct Examinations of Stemple; his wife, Susan J. Stemple; and Stemple's father, William J. Stemple, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, which motions were granted by separate orders entered by the Court on March 16, 2005. On March 30, 2005, Johnson filed a Motion for Sanctions against Stemple; Mrs. Stemple; and Stemple's father for their alleged failure to comply with subpoenas served upon each of them in conjunction with the Rule 2004 examinations. On May 25, 2005, Johnson filed an Amended Motion for Sanctions, asking only for sanctions against Stemple and his wife. At a hearing held on May 26, 2005, the Motion for Sanctions against William J. Stemple was dismissed upon his motion.

2

The hearing on the Amended Motion for Sanctions was held on June 23, 2005. At that hearing, the Court ordered Stemple to provide Johnson with evidence of his homeowner's insurance within five days. The Court also established the date of July 27, 2005, as the date for the Rule 2004 Examinations of Mr. and Mrs. Stemple by Johnson. The Court also held a hearing on the Objections to Confirmation of the First Amended Chapter 13 Plan on June 23, 2005, which were filed by the Internal Revenue Service (which was settled prior to the hearing), and Johnson.[1] The Court continued the hearing on Johnson's Objection, along with his Amended Motion for Sanctions, to the date established for the confirmation hearing of the anticipated amended plan.

Stemple filed his Second Amended Chapter 13 Plan on July 28, 2005, along with Amended Schedules E, F, and J. The Trustee; Internal Revenue Service; and Johnson filed Objections to Confirmation of the Second Amended Chapter 13 Plan, which were scheduled for hearing for September 22, 2005. On that date, the Court also conducted the continued hearing on Johnson's Amended Motion for Sanctions and his Objection to Confirmation of the First Amended Chapter 13 Plan. The Objections to Confirmation by the Trustee and the Internal Revenue Service to the Second Amended Chapter 13 Plan were settled by the parties, with Stemple agreeing to file a subsequent amended plan. The Court continued the hearing on Johnson's Objections to Confirmation of the First and Second Amended Chapter

---

[1] The Trustee filed a Combined Objection to Confirmation and Motion to Dismiss as to the First Amended Chapter 13 Plan on May 26, 2005, which was set for hearing for July 7, 2005. The matter was settled prior to the hearing; thus, no hearing was held.

13 Plans and his Amended Motion for Sanctions to November 30, 2005. The Court also ordered Johnson to file any objection to the Third Amended Chapter 13 Plan within ten days after the filing of such plan and set the confirmation hearing for the Third Amended Chapter 13 Plan for November 30, 2005, as well.

Stemple filed his Third Amended Chapter 13 Plan on October 5, 2005, along with Amended Schedules A, E, I, and J. Johnson objected to confirmation of this plan as well. The hearing on Johnson's Objections to Confirmation of the First, Second, and Third Amended Plans, as well as the hearing on Johnson's Amended Motion for Sanctions, was held November 30, 2005. Following testimony by Stemple and Marvin Gary King, the former owner of a limousine service now owned by Stemple, and upon consideration of the exhibits tendered and arguments made by counsel for both Stemple and Johnson, the Court found, for the reasons stated from the bench, that Johnson's Objections to the First, Second, and Third Amended Chapter 13 Plans should be sustained and confirmation of those plans be denied pending the filing of amended Schedules I and J, and the addition of any new creditors. The Court denied Johnson's Amended Motion for Sanctions.

On December 15, 2005, Stemple filed his Fourth Amended Chapter 13 Plan, as well as Amended Schedules D, G, I, and J. On January 17, 2006, Johnson filed his Objection to Confirmation of the Fourth Amended Chapter 13 Plan. On January 19, 2006, counsel for Stemple filed a Motion to Dismiss Johnson's Objection to Confirmation of the Fourth Amended Plan. On January 25, 2006, Johnson filed his Response to Stemple's Motion to Dismiss Objection, as well as a Motion to Dismiss Stemple's bankruptcy case with prejudice,

4

and a Motion to Continue the hearing on his Objection to Confirmation of the Fourth

Amended Chapter 13 Plan.  The hearing on Johnson's Objection to Confirmation of the

Fourth Amended Chapter 13 Plan; Stemple's Motion to Dismiss Johnson's Objection to

Confirmation; Johnson's Motion to Dismiss Stemple's bankruptcy case; and Johnson's

Motion to Continue was held January 26, 2006.  The Court continued the hearing on

Johnson's Objection to Confirmation and related motions generally pending the outcome of

the February 9, 2006, hearing on Motions to Quash Subpoenas issued by Johnson, which

motions were filed on January 19, 2006, by Stemple, by counsel; on January 20, 2006, by

Gary King, Pro Se; and on January 23, 2006 by William J. Stemple, by counsel, and by Mrs.

Stemple, Pro Se.

On February 9, 2006, the Court held hearings on the Motions to Quash Subpoenas

filed by King and by Stemple.[2]  The Motions to Quash were granted.  At that hearing the

Court established a hearing date of May 2, 2006, for Johnson's Objection to Confirmation

of the Fourth Amended Chapter 13 Plan and for Johnson's Motion to Dismiss Stemple's case

with prejudice.  Following the hearing, the Court entered a Pretrial Order setting forth

discovery and motions deadlines.

On April 17, 2006, counsel for Johnson filed a Motion for Summary Judgment on his

Motion to Dismiss with Prejudice, which was also heard on May 2, 2006.  In his Motion to

---

[2]  The Court was notified by counsel for Johnson on January 31, 2006, that the Motion to
Quash filed by Stemple's father had been resolved.  Although Mrs. Stemple was provided with a
hearing date for her Motion to Quash Subpoena, she did not file a Notice of Hearing with the
Court and thus, no hearing was held on her Motion to Quash.

Dismiss with Prejudice, Johnson relied on his arguments made in his Objection to Confirmation of Stemple's Fourth Amended Chapter 13 Plan. Motion to Dismiss with Prejudice filed by Warren Johnson, Steven V. Stemple, Case No. 04-77388-SCS, Docket Entry 138, filed January 25, 2006. In that objection, Johnson argued, *inter alia*, that Stemple had exhibited dishonesty throughout his bankruptcy proceedings; that members of Stemple's family had also been dishonest throughout Stemple's bankruptcy case; that Stemple failed to propose his Fourth Amended Chapter 13 Plan in good faith; and that Stemple failed to accurately value his assets. Objection to Confirmation of Fourth Amended Chapter 13 Plan filed by Warren Johnson, Steven V. Stemple, Case No. 04-77388-SCS, Docket Entry 121, filed January 17, 2006. In his Motion for Summary Judgment, Johnson argued, among other things, that Stemple was not eligible to be a debtor under Chapter 13 of the Bankruptcy Code because Stemple's noncontingent, liquidated, unsecured debt as of the petition date exceeded the amount set forth in Section 109(e) of the Bankruptcy Code, and that Stemple's plan was not proposed in good faith. Motion for Summary Judgment filed by Warren Johnson, Steven V. Stemple, Case No. 04-77388-SCS, Docket Entry 161, filed April 17, 2006. On May 1, 2006, counsel for Stemple filed a Response to the Motion for Summary Judgment. On that day, the parties also filed a stipulation of facts regarding the matters set for hearing on May 2, 2006.

At the May 2, 2006, hearing, after hearing argument from both sides, the Court denied Johnson's Motion for Summary Judgment on all grounds, including eligibility and bad faith. The Court, hearing no objection by Stemple, sustained Johnson's Objection to Exemptions,

which had been filed earlier in the case and added to the Court's docket for May 2, 2006.

On Johnson's Objection to Confirmation of the Fourth Amended Chapter 13 Plan and his

Motion to Dismiss with Prejudice, the Court heard testimony by several witnesses, including

Stemple and his wife.  Both Johnson and Stemple submitted exhibits into evidence.  At the

conclusion of the hearing, after hearing argument from both parties, the Court took the matter

under advisement.

The Court reconvened the parties on May 24, 2006, to announce its ruling.  The Court

found that Stemple's noncontingent, liquidated, unsecured debt at the time of filing totaled

$294,304.50, just below the threshold of $307,675.00 set forth in Section 109(e) of the

Bankruptcy Code.  The Court entered into the case file its written calculation of Stemple's

noncontingent, liquidated, unsecured debt at the time of filing, which listed the unsecured

creditors of Stemple, the amount of the debt owed to each of those creditors, and the

evidence which assisted the Court in determining the amount of debt owed to each unsecured

creditor.  Factual Finding by the Court as to the Indebtedness of Steven Stemple at the Time

of Filing, Steven V. Stemple, Case Number 04-77388-SCS, Docket Entry No. 194, filed May

24, 2006.  Thus, the Court ruled that Stemple was eligible to be a debtor under Chapter 13

of the Bankruptcy Code.  For the additional reasons stated on the record, and subject to the

announced conditions, the Court confirmed Stemple's Fourth Amended Chapter 13 Plan,

overruled Johnson's Objection to Confirmation, and denied Johnson's Motion to Dismiss

with Prejudice.  The Court conditioned its Order upon Stemple filing an amended Schedule

F to correspond to the representations contained in his Response to Johnson's Motion for

7

Summary Judgment.  The Court also ordered Stemple to file an Amended Statement of Financial Affairs.  Stemple was directed to file his amended 2004 Federal and State tax returns by August 31, 2006, and to annually submit to the Trustee copies of both his personal and his business tax returns along with any annual financial statements for his business. Finally, the Court announced that Stemple must continue to abide by the conditions announced by the Court at the November 30, 2005, hearing.  Stemple filed Amended Schedules D and F, as well as an Amended Statement of Financial Affairs, on June 8, 2006.

Prior to the May 2, 2006, hearing, Stemple, by counsel, filed an Objection to Claim Number 11, which claim was filed by Johnson.  Johnson did not file a response to the Objection to Claim, and on June 20, 2006, as is routine when no hearing is requested by the filer of the claim, the Court entered an order disallowing Johnson's claim.  On June 23, 2006, Johnson file a combined Objection to Order and Motion to Vacate or Modify Order with regard to the order disallowing his claim.  On July 7, 2006, the Trustee filed his Motion and Notice to Allow Claims.  On July 14, 2006, Johnson filed an Objection to the Trustee's Motion and Notice to Allow Claims.  On August 8, 2006, Johnson filed a Motion to Allow Late Filing of Claim and an Amended Objection to Order and Motion to Vacate or Modify Order.

A hearing was held on August 17, 2006, on Johnson's objections and motions related to his claim and on his Objection to Trustee's Motion and Notice to Allow Claims.  The Court continued the matter generally pending the filing by Johnson of an Amended Motion to Allow Late Filing of Claim, which he filed on August 25, 2006.  On August 18, 2006,

8

Johnson filed, by counsel, a Motion to Dismiss Stemple's bankruptcy case with prejudice.

On August 31, 2006, the Court conducted a Status Hearing as to the matters pending in Stemple's case, which included: Johnson's Amended Motion to Allow Late Filing of Claim; Amended Objection to Order and Motion to Vacate or Modify Order; Objection to Trustee's Motion and Notice to Allow Claims; and his Motion to Dismiss Stemple's bankruptcy case.[3]  At the Status Hearing, the Court announced that the Motion to Dismiss with Prejudice filed by Johnson would be treated by the Court as an action seeking the revocation of confirmation of the Fourth Amended Chapter 13 Plan due to the language contained and relief sought in the Motion to Dismiss.  The Court noted that Federal Rule of Bankruptcy Procedure 7001(5) required that such action be brought as an adversary proceeding and *sua sponte* converted the Motion to Dismiss with Prejudice to a Complaint. Counsel for Stemple stated that he was considering filing a motion to dismiss Johnson's Complaint.  Counsel for the Trustee stated that he was considering filing such a motion as well.

As a result of the determination made by the Court and upon consideration of the representations made by the parties, the Court established deadlines for the filing of motions to dismiss the Complaint and responses by the parties.  The Court further suspended discovery with regard to the Complaint pending the Court's decision regarding the

---

[3]  A hearing was also held that day on the Motion to Allow Late Filing of Claim by Ruth McCotter, an alleged creditor of Stemple.  At the commencement of the hearing, counsel for Ms. McCotter moved to withdraw her Motion, which the Court permitted.

anticipated Motions to Dismiss Complaint.  The Court continued generally the proceedings

on Johnson's Amended Motion to Allow Late Filing of Claim and Objection to Trustee's

Motion and Notice to Allow Claims.  The Court issued its own Order continuing the hearings

generally and established the schedule for the filing of motions to dismiss the Complaint and

subsequent responses.

On September 18, 2006, Stemple filed his Answer to Johnson's Complaint.  On

September 29, 2006, counsel for the Trustee filed his Motion to Dismiss Complaint and Brief

in Support of Motion.  Likewise, Stemple filed, by counsel, his Motion to Dismiss Complaint

on October 2, 2006.  Counsel for Johnson timely filed a combined Response to the Motions

to Dismiss filed by the Trustee and Stemple on October 30, 2006.  The latter two parties filed

replies to Johnson's Response on November 13, 2006, and November 15, 2006, respectively.

On December 7, 2006, the Court notified the parties by letter that it did not deem oral

argument necessary with regard to the Motions to Dismiss Complaint and informed the

parties that a written opinion would be issued.

## II.  Johnson's Complaint and Stemple's Answer

Johnson filed, by counsel, a Motion to Dismiss with Prejudice, which, as outlined

above, was *sua sponte* converted to a Complaint for Revocation of Confirmation

("Complaint") by the Court at the Status Hearing held on August 31, 2006.  In his Complaint,

Johnson asks the Court to make the following findings: (1) that Mr. and Mrs. Stemple

"knowingly and intentionally provided false testimony to this Court on May 2, 2006

concerning the McCotter debt;" (2) that Mr. and Mrs. Stemple "acted in concert in knowingly

and intentionally providing false testimony to this Court on May 2, 2006 concerning the McCotter debt;" and (3) that Mr. and Mrs. Stemple "acted in concert in perpetrating a fraud upon this Court and thereby procuring [*sic*] confirmation of the Debtor's chapter 13 plan by fraud." Johnson requests that the Court dismiss Stemple's case with prejudice and without leave to convert his case to another chapter under the Bankruptcy Code; and that the Court enjoin Stemple from refiling under any chapter of the Bankruptcy Code in any court for at least twenty months after the current case is dismissed. Complaint for Revocation of Confirmation (hereinafter "Complaint") filed by Warren Johnson, Warren Johnson v. Steven V. Stemple, Case Number 04-77388-SCS, Adversary Proceeding Number 06-7088-SCS, Docket Entry No. 1, filed August 31, 2006, at pgs. 6-7.

In support of his Complaint, Johnson alleges that Mr. and Mrs. Stemple testified untruthfully under oath at the May 2, 2006, hearing regarding the debt owed to Ruth McCotter. Specifically, Johnson alleges that Stemple's testimony that the debt originated when Mrs. Stemple purchased Ms. McCotter's corporation, and that "'the deal had changed so many times between my wife and her [McCotter] and myself' that 'nobody could remember nor find the original documents of whether I was personally liable for the money or not. . . .'" was false. Johnson further asserts that Stemple's testimony that Ms. McCotter did not intend to collect on the debt was untrue. Johnson also points to Mrs. Stemple's testimony from that hearing, particularly that when she and Ms. McCotter went into business together, "'it did not work out,' that 'Ruth [McCotter] told me . . . to take the paperwork and basically tear it up.'" Complaint, at 2.

11

To demonstrate that Mr. and Mrs. Stemple's testimony was false, Johnson attaches to his Complaint an affidavit purportedly executed by Ms. McCotter, which states that while she received four payments on the underlying promissory note from the transaction between her and the Stemples, there remained an outstanding principal balance on the note of $66,000.00, plus late fees of $675.00 and attorney fees of $13,335.00, for a total outstanding debt of $80,010.00, as of December 28, 2004.[4]  Two exhibits are attached to the affidavit. Exhibit one is a promissory note dated December 1, 2003, executed by Steven V. Stemple as "maker" and designating Ruth J. McCotter as "payee."  The second exhibit is a demand letter dated May 20, 2004, addressed to Stemple from Robert H. Bennett, who Ms. McCotter identifies in her affidavit as her attorney.  Additionally, the affidavit states that Ms. McCotter had "never 'forgiven' the debt evidenced by the Promissory Note," and that she "never told Steven V. Stemple or Susan J. Stemple that I would not hold them liable for the debt evidenced by the Promissory Note."  Attachment to Complaint, labeled Exhibit B.

Johnson argues that the testimony by Mr. and Mrs. Stemple with regard to the McCotter debt was false, as demonstrated by Ms. McCotter's affidavit, and thus, Stemple's noncontingent, liquidated, unsecured debt at the time of filing totaled $374,314.50, comprised of Stemple's noncontingent, liquidated, unsecured debt totaling $294,304.50, which was the amount announced as part of the Court's factual finding at the reconvened hearing on May 24, 2006, plus the unsecured McCotter debt of $80,010.00.  Johnson

---

[4]  Stemple filed his voluntary petition under Chapter 13 of the Bankruptcy Code on December 28, 2004.

therefore argues that, because Stemple's noncontingent, liquidated, unsecured debt totaled more than the limit set forth in Section 109(e) of the Bankruptcy Code of $307,675.00, Stemple was not entitled to relief under Chapter 13 of the Bankruptcy Code.  Complaint, at 2-3.

Johnson asserts that Stemple knowingly and intentionally testified falsely at the May 2, 2006, hearing because he "knew his case would be dismissed if he admitted to the true character of the McCotter debt" and that Stemple "knew that McCotter was not named in either party's List of Witnesses and would not be appearing in Court to challenge or contradict his testimony." Johnson makes the same allegations with regard to Mrs. Stemple's testimony. *Id*. at 4.  Johnson points out that the Court relied on Mr. and Mrs. Stemple's false testimony regarding the McCotter debt in reaching the conclusion that Stemple was eligible to be a debtor under Chapter 13 of the Bankruptcy Code, and that his Fourth Amended Chapter 13 Plan should be confirmed.  *Id*. (citing to Factual Finding as to the Indebtedness of Steven Stemple at the Time of Filing, Steven V. Stemple, Case Number 04-77388-SCS, Docket Entry No. 194, filed May 24, 2006).  As a result, Johnson argues that Mr. and Mrs. Stemple, acting in concert, perpetrated a fraud upon the Court by knowingly testifying falsely.  *Id*. at 4-5.  As a result of that false testimony, Johnson argues that Stemple procured confirmation of his Chapter 13 Plan by fraud.  *Id*. at 5.

Stemple, by counsel, filed an answer to Johnson's Complaint on September 18, 2006. Answer to Complaint for Revocation of Confirmation (hereinafter "Answer") filed by Steven V. Stemple, Warren Johnson v. Steven V. Stemple, Case Number 04-77388-SCS, Adversary

13

Proceeding Number 06-7088-SCS, Docket Entry No. 6, filed September 18, 2006.  Stemple

admits that the Court made a ruling with regard to his case on May 24, 2006, but denies

Johnson's allegations to the extent that they are inconsistent with the Court's ruling.  Stemple

further admits that a hearing was held regarding Johnson's Motion to Dismiss on May 2,

2006, and that he and his wife testified concerning the debt owed to Ruth McCotter, but

denies Johnson's statements to the extent that they are inconsistent with the testimony that

they gave.  Answer, at 1-2.  Stemple also admits that he filed amendments to his schedules

during the course of his bankruptcy but denies that he and his wife intentionally misled the

Court.  *Id*. at 3.  Stemple denies the remainder of Johnson's allegations.  *Id*. at 2-3.  Finally,

Stemple asserts that Johnson is collaterally estopped from litigating the issues that he raises

in his Complaint and argues that the Court's previous ruling is res judicata because the issues

have previously been litigated.  *Id*. at 3.

### III.  Motions to Dismiss by Stemple and the Trustee

Stemple and the Trustee, by counsel, filed separate Motions to Dismiss Johnson's

Complaint.  In his Motion to Dismiss, Stemple recounts that Johnson conducted seven

examinations in his bankruptcy case pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure and has subpoenaed large numbers of documents from several sources

during the pendency of his bankruptcy case.  Motion to Dismiss filed by Steven V. Stemple

(hereinafter "Stemple Motion to Dismiss"), Warren Johnson v. Steven V. Stemple, Case

Number 04-77388-SCS, Adversary Proceeding Number 06-7088-SCS, Docket Entry No. 8,

filed October 2, 2006, at pgs. 1-2.  Stemple also reminds the Court of the confirmation

14

hearing on his Third Amended Chapter 13 Plan held on November 30, 2005, and represents

that after that hearing, Johnson deposed him again, focusing "almost exclusively on the

debtor's list of creditors. Counsel went down the list of creditors one by one asking in detail

about each creditor." Stemple Motion to Dismiss, at 2. Stemple argues that Johnson could

have examined the issue of the McCotter debt at any time within the eighteen months prior

to the confirmation hearing held on May 2, 2006. Stemple argues that he has consistently

asserted that he does not owe a debt to Ms. McCotter, because his wife had turned the

business that she bought from Ms. McCotter back over to Ms. McCotter, thus satisfying any

existing debt. *Id.* at 3.

Based on these facts, Stemple argues that the doctrine of collateral estoppel, which

has historically been applied in bankruptcy proceedings, should prevent Johnson from raising

the issue of the McCotter debt post-confirmation. Likewise, the principle of res judicata

should bar any challenge as to the McCotter debt because the confirmation order has been

entered, which, under Section 1327(a) of the Bankruptcy Code, binds the debtor and each

creditor. *Id.* Further, Stemple argues that courts have rejected the use of Section 1330,

which permits a court to revoke a confirmation order if that order was procured by fraud, to

overturn confirmation orders if a creditor could have raised the issue at hand at confirmation

but failed to do so. *Id.* (citing *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595

(Bankr. D. Or. 1997); *Midlantic Nat'l Bank v. Kouterick* (*In re Kouterick*), 161 B.R. 755

(Bankr. D.N.J. 1993)). Thus, Stemple asserts that Johnson is collaterally estopped from

raising the issue of the McCotter debt at this point in the proceedings and that the

confirmation order is res judicata.  *Id*.

The Trustee makes similar arguments in his Motion to Dismiss Complaint.  Motion to Dismiss filed by George W. Neal, Chapter 13 Trustee (hereinafter "Trustee Motion to Dismiss"), Warren Johnson v. Steven V. Stemple, Case Number 04-77388-SCS, Adversary Proceeding Number 06-7088-SCS, Docket Entry No. 7, filed September 29, 2006.  Initially, the Trustee points out that Stemple listed, in his original schedules, an unliquidated, unsecured debt of $66,500.00 owed to Ms. McCotter.  When he amended Schedule F on February 24, 2005, Stemple listed the McCotter debt as contingent, unliquidated, and disputed.  The Trustee noted that Ms. McCotter did not respond in any fashion to either the original or the amended schedules regarding the debt until July 26, 2006, when she filed, by counsel, a Motion to Allow Late Claim, which motion was later withdrawn at the hearing held August 31, 2006.  The Trustee highlights the fact that the address included in Stemple's schedules for Ms. McCotter and the address Ms. McCotter listed on her Motion to Allow Late Claim are the same. *Id*. at 3-4.

The Trustee makes two arguments in support of his Motion to Dismiss.  First, he argues that Johnson cannot meet the standard of proof regarding the issue of fraud under Section 1330 of the Bankruptcy Code.  The Trustee asserts that standard for fraud under Section 1330 requires the creditor to prove, by clear and convincing evidence, that the debtor made a materially false representation during the confirmation process that the debtor either knew to be false, or was made either without the debtor's belief in its truth, or with reckless disregard for the truth; that the debtor made the representation to induce the Court to rely

16

upon it; that the Court did in fact rely on the materially false representation; and that as a
result of the reliance, the Court confirmed the plan.  *Id*. at 6, 8 (citing *Nikoloutsos v.
Nikoloutsos* (*In re Nikoloutsos*), 199 F.3d 233, 238 (5th Cir. 2000); additional citations
omitted).  In support of this argument, the Trustee asserts that the affidavit purportedly
executed by Ms. McCotter would not serve as sufficient evidence to allow Johnson to sustain
his burden of proof with regard to fraud, especially in light of the surrounding facts.  The
Trustee notes that Ms. McCotter did not file an objection or other response to any of
Stemple's proposed Chapter 13 Plans, and when she filed her Motion to Allow Filing of Late
Proof of Claim, which was later withdrawn, she made no reference to fraud but instead
asserted her unawareness of her failure to previously file a proof of claim in Stemple's case.
*Id*. at 9.  Thus, the Trustee offers that what appears to be the divergent statements of Ms.
McCotter and Mr. and Mrs. Stemple would neither result in a worthwhile use of the Court's
time, nor lead the Court to concluding that Johnson met his burden of proof with regard to
the fraud allegations.  *Id*. at 10.

Second, the Trustee asserts that the doctrine of res judicata should apply under Section
1330 to bar claims, including claims of fraud, that could have or should have been raised at
confirmation regarding the McCotter debt.  The Trustee asserts that confirmation orders are
res judicata as to issues that were decided, or could have been decided, at the confirmation
hearing.  *Id*. at 7, 10 (citing *Midlantic Nat'l Bank v. Kouterick* (*In re Kouterick*), 161 B.R.
755, 760 (Bankr. D.N.J. 1993)).  The Trustee further contends that the *Kouterick* court held
that res judicata applied to the issue of fraud, such that if a creditor could have objected to

confirmation but fails to do so, that creditor cannot later use what would have been a basis

for a confirmation objection as the basis for a claim of fraud under Section 1330. *Id*. (citing

*In re Kouterick*, 161 B.R. at 760).

Specifically, the Trustee asserts that Johnson's Motion for Summary Judgment, which

came on for hearing along with other matters on May 2, 2006, was based in part on the issue

of Stemple's eligibility to be a debtor under Chapter 13 of the Bankruptcy Code; thus,

Johnson carried the burden of persuasion regarding this issue at that hearing.  The Trustee

points out that the Court made a determination at that time, based upon the testimony of Mr.

and Mrs. Stemple, which was the only evidence presented, that the debt owed to Ms.

McCotter had been forgiven.  *Id*. at 7-8, 10-11 (citing Factual Finding as to the Indebtedness

of Steven Stemple at the Time of Filing, Steven V. Stemple, Case Number 04-77388-SCS,

Docket Entry No. 194, filed May 24, 2006).  Johnson presented no evidence at the May 2,

2006, hearing to contradict the Stemples' testimony regarding the alleged debt owed to Ms.

McCotter, despite Johnson having notice since February, 2005, that Stemple had listed this

debt in his schedules as contingent, unliquidated, and disputed.  Thus, the Trustee argues,

Johnson should have known that any testimony at the May 2, 2006, hearing regarding this

alleged debt would be consistent with the treatment of the debt in Stemple's schedules and

could have subpoenaed Ms. McCotter to appear at the hearing to rebut these assertions, but

chose not to do so.  *Id*. at 11.  The determination as to the status of this debt, the Trustee

represents, was key to the determination of Stemple's eligibility to be a debtor under Chapter

13.  Because Johnson failed to properly prepare for the hearing and meet his burden of proof

18

as to the eligibility issue, the Court denied the Motion for Summary Judgment, sustained the

Objection to Confirmation made by Johnson, and confirmed Stemple's amended plan.

Therefore, the Trustee argues, Johnson cannot now relitigate the issue of eligibility by

arguing that Stemple perpetrated a fraud when the issue of fraud as to the alleged McCotter

debt could have been raised at confirmation.  As a result, the Trustee posits that the Court's

ruling on the issue of eligibility and the Court's confirmation of Stemple's amended plan are

res judicata to any subsequent attacks on Stemple's eligibility.  *Id*. at 8, 11-12 (citing 11

U.S.C. § 1327(a); *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595, 596, 598-99

(Bankr. D. Or. 1997)).

IV.  Response of Johnson to the Motions to Dismiss

Johnson filed a combined Response to the Motions to Dismiss filed by Stemple and

the Trustee on October 30, 2006.  Response to Motions to Dismiss Complaint, filed by

Warren Johnson (hereinafter "Response to Motions to Dismiss"), Warren Johnson v. Steven

V. Stemple, Case Number 04-77388-SCS, Adversary Proceeding Number 06-7088-SCS,

Docket Entry No. 10, filed October 30, 2006.

Johnson responds that the Trustee's argument that he (Johnson) cannot meet the

standard of proof as to the issue of fraud "is premature and evidences a failure to appreciate

the strength of the evidence that fraud was practiced upon the Court during the Confirmation

Hearing." Johnson asserts that Ms. McCotter's affidavit "flatly and completely" contradicts

the testimony given on May 2, 2006, by Mr. and Mrs. Stemple and proves that material

misrepresentations were knowingly made by them to achieve confirmation of Stemple's

19

Fourth Amended Chapter 13 Plan.  Response to Motions to Dismiss, at 2.  Further, Johnson

points out that the Complaint was only recently filed, and by the Court's order, discovery has

been stayed pending the outcome of the Court's decision on the Motions to Dismiss.  *Id*. at

9.

On the issue of whether the doctrines of res judicata and/or collateral estoppel would

bar his action, Johnson contends that the fraud that he alleges did not occur prior to

confirmation, but rather, at the confirmation hearing, and that it was not until post-

confirmation that he learned the true status of Stemple's debt to Ms. McCotter.  *Id*. at 2.  To

this extent, Johnson disputes the interpretation of and reliance upon the *Kouterick* case by

Stemple and the Chapter 13 Trustee.  *Id*. at 10.  Johnson argues that the holding of *Kouterick*

would work to prevent a creditor from claiming fraud under Section 1330 only where a

creditor possesses knowledge that the debtor committed a fraud prior to or during the

confirmation hearing but does not act upon such knowledge until post-confirmation.  *Id*.

(citing *Midlantic Nat'l Bank v. Kouterick* (*In re Kouterick*), 161 B.R. 755, 760 (Bankr. D.N.J.

1993)).  However, according to Johnson, the *Kouterick* ruling would be inapplicable when

misrepresentations are knowingly made by a debtor at the confirmation hearing, but the

creditor does not discover that such representations were false until post-confirmation.

Johnson attaches to his Response his affidavit in which he affirms that he "had no actual or

constructive knowledge of the fraud that was being practiced upon the court during the

confirmation hearing or that confirmation was being obtained by that fraud."  *Id*.  Johnson

claims that he, as well as the Court, "had the right to believe and to rely upon" Stemple's

representations regarding the McCotter debt, and that he "had no ability to foresee that the Debtor and his wife would knowingly make material misrepresentations and he [Johnson] had no duty to prevent that kind of perjury and fraud. . . ." *Id*. at 2. Thus, Johnson argues that, while he took "appropriate and reasonable steps" prior to confirmation regarding the nature of the McCotter debt, he "was rebuffed and 'stonewalled'" by his reasonable reliance on Stemple's schedules and representations. *Id*. at 3. Johnson asserts that the Trustee's position that a creditor is estopped from later complaints regarding fraud if that creditor should have known of the fraud prior to confirmation would place a "Herculean duty" upon the creditors to investigate all aspects of a debtor's financial obligations so as to preempt the possibility of perjury. *Id*. at 3, 11. On this point, Johnson cites to *In re Elstien*, 238 B.R. 747 (Bankr. N.D. Ill. 1999), for the proposition that where a debtor's false and misleading acts, in that case with regard to eligibility, lead a court to confirm a plan when in fact the debtor was not eligible for relief under Chapter 13, cause exists to dismiss the case under Section 1307(c)(2), which relief Johnson iterates he also requests in his underlying Complaint. *Id*. at 11 (also citing *In re Scott*, 77 B.R. 636, 638 (Bankr. N.D. Ohio 1987)).

To demonstrate why he was justified in relying upon Stemple's representations regarding the McCotter debt, Johnson states that on his original schedules, Stemple listed unsecured claims totaling $709,733.07 and indicated that each of the claims was designated as unliquidated. Johnson points out that Stemple amended his schedules six times during the pendency of his case, with five of those amendments being filed prior to the May 2, 2006, confirmation hearing. *Id*. at 4. When Johnson deposed Stemple on April 7, 2006, he asked

21

Stemple what he terms an "open-ended question," requesting an explanation of the debt owed to Ruth McCotter.  Stemple stated that he possessed no documentation regarding the loan Ms. McCotter made, and that he could not recall the terms of the loan.  *Id*. at 4-5.  Johnson also points to a sworn affidavit executed by Stemple, which was filed as an attachment to his response to the Motion for Summary Judgment, in which Stemple stated that he did not believe he had any liability to Ms. McCotter.   *Id*. at 5.   Johnson cites that Stemple consistently listed, in his original and his amended schedules, an unsecured debt to Ms. McCotter of $66,500.00; however, the designation of that debt changed on various schedules. For example, on the original schedules, Stemple listed the debt as unliquidated, but the first amendment to Schedule F added the designations of contingent and disputed to the McCotter debt.  The McCotter debt retained the unliquidated, contingent, and disputed designations on subsequent amendments to the schedules.  *Id*. at 6.

Johnson recounts testimony by Mr. and Mrs. Stemple at the May 2, 2006, confirmation hearing, which was also set forth in his Complaint, specifically Stemple's testimony that "'the deal  had changed so many times between my wife and her [McCotter] and myself' that 'nobody could remember nor find the original documents of whether I was personally liable for the money or not,'" as well as his testimony that Ms. McCotter did not intend to collect on the debt.  He also related Mrs. Stemple's testimony that when she and Ms. McCotter went into business together, "'it did not work out,' that 'Ruth [McCotter] told me . . . to take the paperwork and basically tear it up.'"  *Id*. at 8.

Johnson reminds the Court of the continued hearing held on May 24, 2006, when the

Court announced its ruling regarding confirmation and filed its Factual Finding as to the Indebtedness of Steven Stemple at the Time of Filing, which demonstrated how the Court calculated that Stemple had $294,304.50 in unsecured, noncontingent, liquidated debt on the petition date. Johnson recites that the Court reached that conclusion in part based upon its finding that the amount of the debt owed to Ruth McCotter was zero based upon Mr. and Mrs. Stemple's testimony and the fact that Ms. McCotter had not filed a proof of claim. *Id*. at 6-7.

Johnson resubmits Ms. McCotter's affidavit and its accompanying attachments (the promissory note dated December 1, 2003, and the demand letter dated May 20, 2004) as an exhibit to his Response to the Motions to Dismiss his Complaint. *Id*. Johnson argues that these facts demonstrate that Stemple's noncontingent, liquidated, unsecured debt at the time of filing exceeded the limit set forth in Section 109(e) of the Bankruptcy Code. *Id*. at 9.

Finally, Johnson argues that the Court should be permitted to adjudicate a complaint to revoke confirmation when a debtor fails to truthfully answer the Court's questions, and the Court then relies upon those untruthful answers in confirming the debtor's plan of reorganization. According to Johnson, if Mr. and Mrs. Stemple had truthfully testified as to the existence of the promissory note that Stemple executed payable to Ms. McCotter; that Stemple had made payments on the note in the past; that Ms. McCotter had attempted in the past to collect on the note; that Stemple's liability to Ms. McCotter was neither contingent nor unliquidated; and that the debt as of the petition date totaled $80,010.00, the Court would not have confirmed Stemple's plan because it would have instead found that Stemple was not

23

eligible for relief under Chapter 13 of the Bankruptcy Code. *Id.* at 12-13. Johnson also

offers that Mrs. Stemple's materially false testimony, including that she went into business

with Ms. McCotter, versus the true nature of the transaction, that she purchased Ms.

McCotter's business, also contributed to the Court's findings and conclusion to confirm

Stemple's plan. *Id.* at 14.

V.  Replies of Stemple and the Trustee

In his reply to Johnson's Response to Motions to Dismiss, Stemple posits that it is

well-settled that the principle of collateral estoppel applies to bankruptcy proceedings. Reply

to Warren Johnson's Response to Motions to Dismiss Complaint, filed by Steven V. Stemple

(hereinafter "Reply of Stemple"), Warren Johnson v. Steven V. Stemple, Case Number 04-

77388-SCS, Adversary Proceeding Number 06-7088-SCS, Docket Entry No. 13, filed

November 15, 2006, at pg. 1 (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991);

*Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979); *McCart v. Jordana* (*In re Jordana*), 232

B.R. 469, 475 (B.A.P. 10th Cir. 1999), *aff'd* 216 F.3d 1087 (10th Cir. 2000); *Haskell v.

Goldman, Sachs & Co.* (*In re Genesis Health Ventures, Inc.*), 324 B.R. 510 (Bankr. D. Del.

2005), *aff'd in part, vacated in part, and remanded*, 340 B.R. 729 (D. Del. 2006)).

According to Stemple, to preclude a party from re-litigating an issue, four elements

must be shown: (1) the issue was involved in a prior action; (2) the issue was actually

litigated in the prior action; (3) the issue was determined by a valid, final judgment; and (4)

the determination of that issue was essential to the prior judgment. *Id.* at 2 (citing *In re

Genesis Health Ventures, Inc.*, 324 B.R. at 527). Stemple argues that the McCotter debt was

24

an issue at the confirmation hearing held May 2, 2006, as evidenced by Johnson's recitation of Stemple's testimony at that hearing and at the pre-confirmation deposition. Additionally, Stemple argues that the issue of the McCotter debt was specifically addressed in the Court's ruling on May 24, 2006. *Id*. Stemple asserts that these facts also serve to meet the second and third elements of collateral estoppel, in that the matter was addressed during pre-confirmation discovery and at the confirmation hearing, and by the fact that the Court made specific factual findings regarding the McCotter debt in its ruling on confirmation. Stemple asserts that the fourth element of collateral estoppel is present in the instant matter as well, as the determination of the issue of the McCotter debt was essential to the Court reaching its decision to confirm his plan. *Id*. at 3.

Stemple disputes Johnson's claim that he did not have knowledge of the facts and circumstances surrounding the McCotter debt prior to the confirmation hearing, arguing that the McCotter debt was set forth on his schedules and was addressed by Johnson during the discovery process. Stemple also points out that the McCotter debt was also listed on Mrs. Stemple's Chapter 7 bankruptcy schedules, which were filed approximately one year prior to the confirmation of his plan, and that Mrs. Stemple also listed the McCotter debt as contingent and disputed. *Id*. Thus, Stemple argues that Johnson had ample opportunity to investigate the nature and status of the McCotter debt prior to confirmation. Upon confirmation, however, the Chapter 13 plan served to define the rights of himself and his creditors. *Id*. at 4 (citing *In re Joseph*, Case No. 97-16155-SSM, 1998 WL 939694, at *3 (Bankr. E.D. Va. Nov. 4, 1998) (unreported)).

25

Stemple also relies upon Federal Rule of Civil Procedure 60, made applicable to proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 9024. Stemple argues that Johnson's argument fails under subsection 2 of Rule 60(b), which requires the moving party to show the existence of newly discovered evidence which could not have been discovered by due diligence prior to the expiration of the time limits within which to move for a new trial under Rule 59(b) of the Federal Rules of Civil Procedure. According to Stemple, Johnson has been on notice of the alleged debt to Ms. McCotter throughout his bankruptcy proceedings and discounts any argument that further information regarding the matter could not have been obtained without the "Herculean" effort that Johnson alleges. *Id.* at 4-5.

Instead, Stemple asserts that his treatment of the alleged debt, specifically that he does not owe a debt to Ms. McCotter, has remained consistent throughout his bankruptcy proceedings. *Id.* at 5. Stemple argues, then, that any additional evidence regarding the alleged McCotter debt, can be considered neither newly discovered nor fraudulent under Rule 60(b) simply because Johnson is unhappy with the outcome of the confirmation hearing and the treatment of his (Johnson's) debt in his (Stemple's) plan. *Id.* at 6 (citing *Farley v. Coffee Cupboard, Inc.* (*In re Coffee Cupboard, Inc.*), 119 B.R. 14, 19 (E.D.N.Y. 1990)). Stemple also points out that Ms. McCotter did not object to any of his proposed Chapter 13 plans, nor file a proof of claim in his case. *Id.* In conclusion, Stemple contends that Johnson's arguments in the instant proceeding are substantially similar to those he lodged in his Motion to Dismiss with prejudice which was filed prior to confirmation, and thus,

26

Johnson's Complaint should be dismissed with prejudice. *Id.*

The Trustee also filed a reply to Johnson's Response to Dismiss Complaint. Reply to Warren Johnson's Response to Motions to Dismiss Complaint, filed by George W. Neal, Chapter 13 Trustee (hereinafter "Reply of Trustee"), Warren Johnson v. Steven V. Stemple, Case Number 04-77388-SCS, Adversary Proceeding Number 06-7088-SCS, Docket Entry No. 11, filed November 13, 2006. At the outset, the Trustee disputes statements made by Johnson in his Response which Johnson characterizes as facts but which the Trustee argues are actually arguments and/or opinions in support of his (Johnson's) position. Specifically, the Trustee asserts that Johnson's statement that Stemple did not disclose the true nature of the McCotter debt during his deposition in April, 2006, is more appropriately an argument posited by Johnson rather than a factual statement in support of his position. *Id.* at 1-2. Similarly, the Trustee points to Johnson's statement that the amount of the debt owed to Ms. McCotter as of the petition date was $80,010.00. The Trustee offers that this is an argument made by Johnson, not a fact established by the Court, nor a stipulation by the parties, and thus, such statements should be considered by the Court to be argument rather than fact. *Id.* at 2.

In response to Johnson's argument that the Trustee has prematurely raised the issue that Johnson will be unable to sustain his burden of proof as to fraud under Section 1330, the Trustee argues that the first element that Johnson must prove is that the debt did in fact exist at the time of filing in order to establish that a fraud was perpetrated on the Court. *Id.* at 2-3. The Trustee contends that the submission by Johnson of an alleged affidavit executed by Ms.

27

McCotter, a promissory note, and an alleged collection letter dated approximately seven months prior to Stemple's filing, along with the failure of Ms. McCotter to participate in Stemple's bankruptcy proceeding, create, at most, an issue of fact as to whether the McCotter debt existed at the time of filing.  *Id*. at 3.  Even if Johnson's submissions constitute sufficient evidence to establish the existence of the debt to Ms. McCotter at the time of filing, Johnson still must show, by clear and convincing evidence, that fraud was committed. Reiterating the five elements that must be shown to prove that fraud occurred, the Trustee argues that Johnson cannot meet that burden under the high standard of clear and convincing evidence and could not meet that burden even if the standard required a showing by a preponderance of the evidence.  *Id*. at 3-4.

The Trustee also refutes Johnson's argument that because he has already gathered evidence in the form of the McCotter affidavit, promissory note, and collection letter, he (Johnson) should be entitled to conduct discovery as to the allegations made in his Complaint.  The Trustee argues that Johnson should have conducted the discovery that he now desires to undertake prior to the confirmation process.  *Id*. at 4-5.  The Trustee argues that Johnson has been on notice of the existence and status of the McCotter debt since Stemple filed his bankruptcy in December 2004, and thus, should have anticipated that this debt was within the scope of questioning during the confirmation process.  *Id*. at 5.

Further, the Trustee asserts that any reliance upon the representations made with regard to the status of the McCotter debt that is couched now in terms of fraud would have been more properly addressed as an issue regarding eligibility during the confirmation

28

process.  The Trustee asserts that Johnson could have served a subpoena upon Ms. McCotter to guarantee her attendance at the confirmation hearing on May 2, 2006, or assuming arguendo that Johnson was truly "surprised" by Stemple's testimony at confirmation regarding the McCotter debt, could have requested a continuance from the Court on that basis to allow him time to subpoena Ms. McCotter as a rebuttal witness.  Johnson, however, chose not to undertake either of these tasks, nor did he file any type of motion during the three weeks between the hearing and the date on which the Court rendered its oral ruling following the confirmation hearing.  *Id*.  According to the Trustee, the same facts that were present prior to and during confirmation are identical to those now in existence, but that Johnson failed to conduct adequate discovery, failed to properly prepare for the eligibility issue prior to the confirmation hearing, and thus failed to meet his burden on that issue at confirmation. The Trustee argues that Johnson should not now be permitted to use Section 1330 as a tool for re-litigating an issue that should have been litigated at confirmation, and instead, res judicata should apply such that the Court should dismiss Johnson's Complaint.  *Id*. at 6.

## VI.  Conclusions of Law

Although not stated by the parties, the Motions to Dismiss filed by Stemple and the Trustee arise in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated into the Federal Rules of Bankruptcy Procedure through Rule 7012.  Pursuant to Rule 12(b)(6), a defendant may move for the dismissal of the plaintiff's claim for failure to state a claim upon which relief may be granted:

Every defense, in law or fact, to a claim for relief in any pleading, whether a

> claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the response pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted. . . .

Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Bankr. P. 7012.  When considering a motion brought pursuant to Rule 12(b)(6), the Court must take the allegations that are pleaded as true.  *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1993) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).  A case should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The test is not whether "on the face of the pleadings that a recovery is very remote and unlikely."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Instead, the court must "construe[] the claims in the light most favorable to the non-moving party and its allegations must be taken as true."  *Martin Marietta Corp.*, 991 F.2d at 97 (citing *Jenkins*, 395 U.S. at 421).

The issues present in the instant matter are ones of first impression for this Court.  Therefore, the Court will begin by outlining the important doctrines and statutes raised by the parties in this proceeding, as well as applicable case law.

### A.  Res Judicata and Collateral Estoppel

The doctrines of res judicata and collateral estoppel are often discussed by way of comparison, and such approach will also be taken here.  Res judicata, also referred to as "claim preclusion," dictates that "a final judgment on the merits of an action precludes the

parties or their privies from relitigating issues that were or could have been raised in that action." *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 336 fn.16 (2005) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  More fully, res judicata provides that

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'

*United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).  Thus, the doctrine of res judicata prohibits parties subject to a final judgment in a previous suit from relitigating issues arising from the same cause of action in later adjudication.  Res judicata applies where there exists: (1) "a judgment on the merits in a prior suit;" (2) that judgment "resolv[es] claims by the same parties or their privies;" and (3) there is "a subsequent suit based on the same cause of action."  *Dresser v. Backus*, 229 F.3d 1142 (4th Cir. 2000) (unpublished table decision) (quoting *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1473 (4th Cir. 1996)).

Under the doctrine of collateral estoppel, or "issue preclusion," if a court has decided an issue of fact or law necessary to a judgment, the determination of that issue of fact or law is conclusive and may not be relitigated in a suit on a different cause of action that involves a party to the initial case against whom the doctrine is asserted where that party had a full and fair opportunity to litigate the issue in the previous case.  *San Remo Hotel*, 545 U.S. at 336 fn.16 (citing *Allen*, 449 U.S. at 94); *see also Sedlack v. Braswell Servs. Group*, 134 F.3d 219,

224 (4th Cir. 1998).  The doctrine of collateral estoppel requires the moving party establish:

(1) "'the issue sought to be precluded is identical to one previously litigated;'" (2) "the issue

was actually determined in the prior proceeding;" (3) "the issue's determination was 'a

critical and necessary part of the decision in the prior proceeding;'" (4) "the prior judgment

is final and valid;" and (5) "the party against whom collateral estoppel is asserted 'had a full

and fair opportunity to litigate the issue in the previous forum.'" *Collins v. Pond Creek

Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Sedlack*, 134 F.3d at 224).  Thus,

issue preclusion is more narrowly tailored, focusing on issues of law and fact common in two

separate causes of action.  *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir.

2002).

Despite their critical distinction, both the res judicata and collateral estoppel doctrines

serve to quell multiple lawsuits and their associated costs; conserve the Court's resources;

prevent inconsistencies among and between decisions; and encourage the parties to rely on

the adjudication process and the final judgments rendered therein.  *Allen*, 449 U.S. at 94

(citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  Both doctrines have often

been discussed and applied in the bankruptcy context.  *See, e.g.*, *Grogan v. Garner*, 498 U.S.

279, 284 (1991) (addressing the applicability of collateral estoppel in nondischargeability

proceedings); *Brown v. Felsen*, 442 U.S. 127, 132 (1979) (discussing application by

bankruptcy court of res judicata doctrine on issue of dischargeability where judgment had

been previously entered in a state court collection suit); *First Union Commercial Corp. v.

Nelson, Mullins, Riley and Scarborough* (*In re Varat Enters.*), 81 F.3d 1310, 1315 (4th Cir.

32

1996) (holding that creditor was barred from objecting to claim of debtor's law firm

regarding its liens on the debtor's arbitration award under several doctrines, including res

judicata and collateral estoppel); *Hagan v. McNallen* (*In re McNallen*), 62 F.3d 619, 624-26

(4th Cir. 1995) (determining that state court judgment served to collaterally estop creditor

from relitigating dischargeability of debt); *Combs v. Richardson*, 838 F.2d 112, 114-16 (4th

Cir. 1988) (holding that the creditor was collaterally estopped from relitigating

nondischargeability of debt where a prior jury verdict in a diversity assault action had been

rendered against the debtor); *Turshen v. Chapman*, 823 F.2d 836 (4th Cir. 1987) (discussing

collateral estoppel's preclusive effect on debtor bringing misfeasance claim against trustee

following bankruptcy court's decision that the trustee had not violated his fiduciary duties

while acting in his official capacity).

### B. Res Judicata Effect of Confirmation Orders and Revocation of Confirmation Procured by Fraud Under Section 1330

Section 1327 of the Bankruptcy Code espouses the policy of finality with regard to

order of confirmation, providing that "[t]he provisions of a confirmed plan bind the debtor

and each creditor, whether or not the claim of such creditor is provided for by the plan, and

whether or not such creditor has objected to, has accepted or has rejected the plan."  11

U.S.C. § 1327(a) (2005).[5]  Thus, orders of confirmation, like myriad orders entered by this

---

[5]  The citations and quotations in this Memorandum Opinion to Title 11 of the United States Code are to those sections in effect at the time the underlying bankruptcy case was filed, not to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which took effect October 17, 2005.

Court, are considered final judgments, thus triggering the doctrines of res judicata and/or

collateral estoppel in many respects.    *See, e.g.*, *In re Varat Enters.*, 81 F.3d at 1315;

*Piedmont Trust Bank v. Linkous* (*In re Linkous*), 990 F.2d 160, 162 (4th Cir. 1993); *Combs*,

838 F.2d at 114; *Heritage Hotel Ltd. P'ship I v. Valley Bank of Nevada* (*In re Heritage Hotel*

*Ltd. P'ship I*), 160 B.R. 374, 377 (B.A.P. 9th Cir. 1993); *Florida v. Randolph* (*In re*

*Randolph*), 273 B.R. 914, 918 (Bankr. M.D. Fla. 2002).    This policy of finality, then, extends

the binding effect of a confirmed plan to any issue litigated among the parties and to any

issue that was necessarily determined by the Court in deciding to confirm the plan.    *In re*

*Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989).    For example, "[a]n order confirming a chapter

13 plan implicitly determines eligibility.    The bankruptcy court's eligibility determination

became final upon entry of the confirmation order . . . ." *Moen v. Hull* (*In re Hull*), 251 B.R.

726, 730-31 (B.A.P. 9th Cir. 2000)  (citing *United Phosphorus Ltd. v. Fox* (*In re Fox*), 241

B.R. 224, 229 (B.A.P. 10th Cir. 1999); *Fed. Deposit Ins. Corp. v. Wenberg* (*In re Wenberg*),

94 B.R. 631, 636 (B.A.P. 9th Cir. 1988), *aff'd* 902 F.2d 768 (9th Cir. 1990)).    Courts have

further held that if no objection to confirmation is filed after proper notice, creditors will be

bound by the terms of the plan.    *Rafferty v. First Union Mortgage Corp.*, Case No. 97-CV-

6763, 1998 U.S. Dist. LEXIS 104, at *12 (E.D. Pa. Jan. 12, 1998) (quoting *In re Waldman*,

88 B.R. 59, 61 (E.D. Pa. 1988)).

   Despite the general applicability of the doctrine of res judicata to confirmation orders,

exceptions to the doctrine do exist.    *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595,

597 (Bankr. D. Or. 1997) ("Applying res judicata to confirmation orders enforces the

doctrine of finality as expressed in Section 1327(a). There are, however, exceptions to the

res judicata doctrine surrounding confirmation of Chapter 13 plans."). Section 1330 provides

that, "[o]n request of a party in interest at any time within 180 days after the date of the entry

of an order of confirmation under section 1325 of this title, and after notice and a hearing,

the court may revoke such order if such order was procured by fraud." 11 U.S.C. § 1330(a).

The Code goes on to provide that if an order of confirmation is revoked pursuant to Section

1330, "the court shall dispose of the case under section 1307 of this title, unless, within the

time fixed by the court, the debtor proposes and the court confirms a modification of the plan

under section 1329 of this title." *Id.* § 1330(b). In discussing Section 1330, one court aptly

explained:

> Clearly, the Congressional purpose behind the enactment of Section 1330(a)
> was to allow a party in interest to seek revocation of an order confirming a
> Chapter 13 plan where the debtor had procured such confirmation through
> fraud and the fraud is discovered or becomes apparent, to the parties seeking
> revocation, after confirmation but within the grace period allowed by the
> statute.

*In re Ritacco*, 210 B.R. at 598. The *Ritacco* court went on to reason that, were a court to

allow a challenge to confirmation when the creditor knew of the fraud prior to confirmation

but declined to raise such issue until post-confirmation, creditors could wait out the

confirmation process, and then bring a Section 1330(a) action as a last resort. The court

found that such was contrary to Congressional intent, as set forth in Section 1327(a). *Id.* at

598-99.

In addition, the case law that guides this Court provides that if confirmation was

35

procured by fraud, the binding nature of the doctrines of res judicata and/or collateral estoppel will not apply, thus prohibiting the debtor from benefitting from his misdeeds to the detriment not only of his creditors but to the bankruptcy system as a whole. *See In re Szostek*, 886 F.2d 1405, 1410, 1413 (3d Cir. 1989); *United States v. Edmonston*, 99 B.R. 995, 999 (E.D. Cal. 1989) (finding that the doctrine of res judicata prohibits a post-confirmation challenge as to issues related to confirmation unless the moving party shows fraud was committed by the debtor).[6]

Because fraud is not defined in Section 1330, courts have turned to the common law elements of fraud in determining the moving party's burden. To support a complaint for the revocation of confirmation, the majority of courts have held that the following five elements of fraud at common law must be proven by clear and convincing evidence:

> (1) that the debtor made a representation regarding . . . compliance with Section 1325 which was materially false;
>
> (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;
>
> (3) that the representation was made to induce the Court to rely upon it;
>
> (4) the court did rely upon it; and
>
> (5) that as a consequence of such reliance, the court entered the confirmation order.

---

[6] Case law highlights several other procedural avenues for attacking an order of confirmation, including through an appeal; a motion to alter or amend the order (including a motion to reconsider); a motion to dismiss the case; a motion to correct a clerical error; a motion to set aside confirmation for due process violation; and a motion to modify plan. *In re Moseley*, 74 B.R. 791, 798 (Bankr. C.D. Cal. 1987), *vacated and dismissed on appeal on other grounds*, 101 B.R. 608 (B.A.P. 9th Cir. 1989).

*In re Moseley*, 74 B.R. 791, 803 (Bankr. C.D. Cal. 1987), *vacated and dismissed on appeal on other grounds*, 101 B.R. 608 (B.A.P. 9th Cir. 1989) (citing *Stamford Mun. Employees' Credit Union v. Edwards* (*In re Edwards*), 67 B.R. 1008, 1009-10 (Bankr. D. Conn. 1986)); *see also Nikoloutsos v. Nikoloutsos* (*In re Nikoloutsos*), 199 F.3d 233, 238 (5th Cir. 2000); *Rafferty v. First Union Mortgage Corp.*, Case No. 97-CV-6763, 1998 U.S. Dist. LEXIS 104, at *8-9 (E.D. Pa. Jan. 12, 1998) (citing *In re Siciliano*, 167 B.R. 999, 1014-15 (Bankr. E.D. Pa. 1994)); *Centex Home Equity Co. v. Woodling* (*In re Woodling*), Case No. 03-40183, Adversary No. 03-7102, 2004 Bankr. LEXIS 1751, at *16 (Bankr. D. Kan. Oct. 14, 2004); *Florida v. Randolph* (*In re Randolph*), 273 B.R. 914, 918 (Bankr. M.D. Fla. 2002); *see also In re Cowan*, No. 05-60028JPK, 2006 WL 2228957, at *1 (Bankr. N.D. Ind. Aug. 3, 2006) (noting in dicta that the requirements to establish fraud under Section 1330 "is a high threshold burden"). *But see In re Bulson*, 327 B.R. 830, 851 (Bankr. W.D. Mich. 2005) (rejecting the test employed to determine fraud by a majority of courts on the basis that the test, as derived from that used to determine whether a fraud was committed under Section 523, would construe fraud too narrowly for the purposes of Section 1330, and instead utilizing the test for fraud as defined by the Sixth Circuit Court of Appeals to encompass situations where fraud is committed upon the court itself); *Tenn-Fla Partners v. First Union Nat'l Bank of Florida*, 229 B.R. 720, 729 (W.D. Tenn. 1999) (finding that, when determining whether to revoke confirmation procured due to fraud in a Chapter 11 case pursuant to Section 1144, the proper evidentiary standard was preponderance of the evidence, not clear and convincing evidence).

Revocation of confirmation is a remedy that has rarely been exercised by the courts. *In re Moseley*, 74 B.R. 791, 803 (Bankr. C.D. Cal. 1987), *vacated and dismissed on appeal on other grounds*, 101 B.R. 608 (B.A.P. 9th Cir. 1989) (citing seven cases where courts refused to revoke confirmation, including *Stamford Mun. Employees' Credit Union v. Edwards* (*In re Edwards*), 67 B.R. 1008 (Bankr. D. Conn. 1986) (no evidence that statements regarding valuation of assets by debtor were known to be false by the debtor or made with reckless disregard for their truth); *United States v. Cleveland* (*In re Cleveland*), 64 B.R. 810 (Bankr. S.D. Cal. 1986) (no evidence of fraud); *In re Russell*, 29 B.R. 332 (Bankr. E.D.N.Y. 1983) (no evidence of fraud); *Sec. Ins. Co. of Hartford v. Vratanina* (*In re Vratanina*), 22 B.R. 453 (Bankr. N.D. Ill. 1982) (failure to receive notice of confirmation hearing insufficient basis upon which to seek revocation); *In re Torres*, 15 B.R. 794 (Bankr. E.D.N.Y. 1981) (no allegation of fraud made); *Mercantile Holdings, Inc. v. Dobkin* (*In re Dobkin*), 12 B.R. 934 (Bankr. N.D. Ill. 1981) (complaint untimely filed); and *Gen. Motors Acceptance Corp. v. Willis* (*In re Willis*), 6 B.R. 555 (Bankr. N.D. Ill. 1980) (no allegation or evidence of fraud)); *see also In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989) (creditor did not timely object to confirmation and therefore, could not move for revocation absent showing of fraud); *Rafferty v. First Union Mortgage Corp.*, Case No. 97-CV-6763, 1998 U.S. Dist. LEXIS 104, at *8-9 (E.D. Pa. Jan. 12, 1998) (no showing of fraudulent conduct); *In re Blackaby*, No. 05-10755, 2006 WL 3885134 (Bankr. E.D. Ky. Sept. 21, 2006) (slip opinion) (untimely complaint as well as lack of allegation of fraud); *Centex Home Equity Co. v. Woodling* (*In re Woodling*), Case No. 03-40183, Adversary No. 03-7102, 2004 Bankr.

38

LEXIS 1751, at *16 (Bankr. D. Kan. Oct. 14, 2004) (insufficient evidence to determine that confirmation was procured by fraud); *Florida v. Randolph* (*In re Randolph*), 273 B.R. 914 (Bankr. M.D. Fla. 2002) (no showing that debtors made a material misstatement that was knowingly false or in reckless disregard of the truth); *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595, 597 (Bankr. D. Or. 1997) (denying complaint seeking revocation of confirmation because moving creditor knew of fraud but failed to object to confirmation, and thus, res judicata barred creditor from seeking revocation); *In re Siciliano*, 167 B.R. 999 (Bankr. E.D. Pa. 1994) (untimely complaint); *Midlantic Nat'l Bank v. Kouterick* (*In re Kouterick*), 161 B.R. 755 (Bankr. D.N.J. 1993) (creditor did not object to confirmation and thus, res judicata barred creditor's motion for revocation of confirmation).

Cases in which revocation of confirmation has occurred include *In re Powers*, 48 B.R. 120 (Bankr. M.D. La. 1985), where the court found that revocation of confirmation was appropriate as a result of the debtor undervaluation of certain assets, the complete failure to list other assets, and his disposal of the unlisted assets in order to fund a vacation. *Id.* at 120. In *Nikoloutsos v. Nikoloutsos* (*In re Nikoloutsos*), 199 F.3d 233 (5th Cir. 2000), the Fifth Circuit Court of Appeals reversed the decisions of the bankruptcy court and the district court, where both courts held that the pursuing creditor (the debtor's former spouse) had not demonstrated that the debtor knew the representation on his bankruptcy schedules regarding a debt owed to the creditor, specifically a state court judgment in favor of the creditor, was false or that the debtor made the representation with reckless disregard for its truth. The

court also found that the district court's finding that the bankruptcy court did not rely on the

debtor's alleged misrepresentation in determining whether the Chapter 13 plan should be

confirmed to be clearly erroneous.  *Id*. at 238.  Instead, the Fifth Circuit found that the

bankruptcy court must have relied on the debtor's inaccurate schedules when it determined

eligibility for Chapter 13 relief, and not upon the relevant state court judgment, of which it

had knowledge, because without such reliance, the debtor would not have been eligible for

relief.  The court thus found that confirmation had been fraudulently obtained.[7]  *Id.*

The case of *In re Scott*, 77 B.R. 636 (Bankr. N.D. Ohio 1987), illustrates fraud in the

most egregious sense.  There the debtor failed to provide notice of the confirmation hearing

to a certain creditor, despite the debtor having actual knowledge of the creditor's mailing

address.  The creditor also alleged and successfully proved that the debtor knowingly failed

to list creditors; failed to provide the court with her past addresses and aliases, as required;

and utilized multiple Social Security numbers on her various bankruptcy filings.  *Id*. at 637.

Testimony by the debtor during the hearing on the revocation motion was contrary to the

---

[7]  The remedy fashioned by the Fifth Circuit in *Nikoloutsos* called for the bankruptcy
court to vacate the order of confirmation.  In addition, because the case was originally filed as a
Chapter 7 and later converted to a case under Chapter 13, the court further ordered that the
conversion from Chapter 7 to Chapter 13 be vacated and for the case to proceed as one under
Chapter 7 of the Bankruptcy Code.  *In re Nikoloutsos*, 199 F.3d at 238.  This case is discussed in
the realm of revocation under Section 1330, however, because one of the issues on appeal to the
Fifth Circuit was whether the bankruptcy court and the district court erroneously decided that
confirmation had been fraudulently procured.  *Id*. at 237-38.  Further, although the Fifth Circuit
uses the phrase "vacate its order confirming the Chapter 13 plan" (*Id.* at 238), it is this Court's
view, given the context of the discussion, the issue on appeal, and the direction to vacate the
conversion order, that the Fifth Circuit's order is more appropriately viewed as a revocation of
confirmation, rather than the vacation of such.

information that she had provided in her bankruptcy papers and served as a clear indication to the court that confirmation of her plan had been procured through a fraud upon the court. *Id.* at 638.  Thus, the court found that the creditor had more than sustained her burden of proof by clear and convincing evidence that the debtor intended to and did in fact commit a fraud upon the court, and thus, the court revoked confirmation of the debtor's Chapter 13 plan. *Id.*

C.  Motions to Revoke Confirmation Under Rule 60

While Section 1330 would appear, on its face, to provide the exclusive avenue by which to seek revocation of confirmation, there exists a segment of cases in which the moving party has sought revocation of confirmation within the context of a motion to reconsider under Rule 60 of the Federal Rules of Civil Procedure, as incorporated into the Federal Bankruptcy Rules of Procedure via Rule 9024.   Under Rule 60, a party may be granted relief from a judgment or order on several grounds, including clerical mistakes (Fed. R. Civ. Proc. 60(a)); "mistake, inadvertence, surprise, or excusable neglect" (Fed. R. Civ. Proc. 60(b)(1)); newly discovered evidence (Fed. R. Civ. Proc. 60(b)(2)); "fraud . . ., misrepresentation, or other misconduct of an adverse party" (Fed. R. Civ. Proc. 60(b)(3)); "the judgment is void," (Fed. R. Civ. Proc. 60(b)(4)); "the judgment has been satisfied, released, or discharged," (Fed. R. Civ. Proc. 60(b)(5)); or "any other reason justifying relief from the operation of the judgment" (Fed. R. Civ. Proc. 60(b)(6)).

One case in this district has addressed this issue, *In re Joseph*, Case No. 97-16155-

41

SSM, 1998 WL 939694 (Bankr. E.D. Va. Nov. 4, 1998) (unreported). The matter came

before the court on a motion filed by the Internal Revenue Service to vacate or modify a

confirmed Chapter 13 plan, or in the alternative, to dismiss the case because the priority tax

claim, for which a proof of claim was timely filed by the Internal Revenue Service, was not

provided for in the plan. When the debtor filed his Chapter 13 plan, the Internal Revenue

Service was served along with the debtor's other creditors. The only objections to

confirmation filed were by the Chapter 13 Trustee and a secured creditor (a car lender). Both

objections were later withdrawn, and the plan was confirmed.[8] *Id.* at *1.

In addition to addressing the argument by the Internal Revenue Service that the debtor

should be ordered to modify his plan pursuant to Section 1329 of the Bankruptcy Code,[9] the

Court also addressed whether the Internal Revenue Service could be granted relief under

Section 1330. The Court concluded that Section 1330 provided no basis for relief because

the motion was brought more than 180 days after entry of the order confirming the Chapter

---

[8] In this case, as in others that this Court observes on occasion, the Chapter 13 plan was
confirmed prior to the expiration of the bar date for the filing of governmental claims. *See In re
Joseph*, 1998 WL 939694, at * 1 (noting that the Chapter 13 plan was confirmed on November
18, 1997, but the bar date for the filing of proofs of claim by governmental entities was not until
February 17, 1998).

[9] Section 1329 allows for the modification of a Chapter 13 plan upon motion by the
debtor, the trustee, or the holder of an allowed unsecured claim. On this issue, Judge Mitchell
found that the modification proposed by the Internal Revenue Service was not feasible, as the
debtor was already paying in all of his disposable income for 36 months, as required, and even if
the plan was extended to the maximum allowed time period under the Code of 60 months, the
entire claim of the Internal Revenue Service could not be paid. Thus, Judge Mitchell denied the
motion to the extent that it sought to compel modification. *In re Joseph*, 1998 WL 939694, at
*5.

13 plan, and there was not the slightest evidence or suggestion that confirmation was procured by fraud. *Id*. at *5.

Judge Mitchell then discussed Rule 60 as the last potential avenue for attacking confirmation, and whether Rule 9024 (which incorporates Rule 60 of the Federal Rules of Civil Procedure into the Federal Rules of Bankruptcy Procedure) permits a creditor or trustee to seek relief from confirmation under that Rule for any reason other than fraud. He states that:

> [Rule 9024] does not in express terms state that relief may be decreed only for the grounds stated in Section 1330. To be sure, to allow attacks on a confirmation order under Rule 9024 on grounds other than the sole ground stated in § 1330(a) would arguably make the statute something of a nullity. At the same time, it is difficult to believe that Congress, in drafting § 1330, or the Supreme Court, in adopting Rule 9024, intended to prevent bankruptcy courts from granting relief from confirmation orders for any of the various weighty reasons for which a federal court may set aside a final judgment in a civil action. While the matter is not wholly free from doubt, the court concludes that Rule 9024 may be used to grant relief from a confirmation order on grounds other than fraud. Such grounds, moreover, would potentially include—either under the rubric of "mistake" or "any other reason justifying relief"—the failure of the plan to provide for a timely filed claim in those circumstances where the plan was confirmed prior to the expiration of the claims bar date.

*Id*. at *6. Judge Mitchell's opinion highlights the difference, then, between *revocation*, under Section 1330 on the basis of fraud, and the granting of other *relief*, as set forth in Rule 60 for reasons such as mistake or clerical error.

In *Branchburg Plaza Associates, L.P. v. Fesq* (*In re Fesq*), 153 F.3d 113 (3d Cir.

43

1998), *cert. denied*, 526 U.S. 1018 (1999),[10] the creditor, Branchburg Plaza Associates

(hereinafter "Branchburg"), did not file an objection to confirmation of the debtor's Chapter

13 plan (which proposed to pay the secured claim in a single lump sum), and the plan was

confirmed. *Id.* at 114.  Immediately after confirmation, the debtor filed a motion to avoid

Branchburg's lien, which prompted Branchburg to file a cross-motion to vacate confirmation,

on the grounds that the creditor did not file an objection due to a computer glitch in the office

of its attorney.  The bankruptcy court granted the debtor's motion to avoid lien and denied

Branchburg's motion to vacate confirmation.  *Id.* at 114-15.  On appeal, the district court

affirmed.  *Id.* at 115.

    The Third Circuit Court of Appeals, in a 2-1 split decision, began its analysis with the

language of Section 1330 of the Bankruptcy Code and found that the proper interpretation

of that section would give effect to both the 180-day time limit prescribed therein as well as

the phrase "if such order was procured by fraud."  *Id.*  In applying the general rules of

statutory construction, the Court reasoned that it was unlikely that Congress intended the last

phrase to be mere superfluous language, since the phrase could have been omitted entirely

and the statute still be read sensibly.  *Id.*  In disposing of the creditor's argument that Rule

60 should be read as setting forth additional, potential grounds for the revocation of

confirmation, the Court reasoned that the creditor's position would in effect deprive the

---

[10]  While the *Fesq* case was before the court as a result of a motion to vacate an order of
confirmation, as opposed to revocation, the court there extensively analyzes the grounds
available for revocation in general, and the revocation of confirmation orders under Section 1330
specifically.  *See In re Fesq*, 153 F.3d at 115-19.

phrase "if such order was procured by fraud" in Section 1330(a) of any substantive effect with regard to revocation. *Id*. at 116. The court also stated that "if Section 1330(a) is read as stating that an order confirming a plan cannot be revoked except upon a showing of fraud, a complaint to revoke a confirmed plan may still be filed under Rule 60 (as contemplated in Rule 9024(3)) because fraud is one of the bases for relief under that rule. Thus our decision today gives effect to both Section 1330(a) (which would of course trump anyway in the event of a conflict between that statute and a rule) and Rule 9024(3)." *Id*. at 116-17. The *Fesq* court goes on to note, however, that despite Section 1330 foreclosing other potential avenues for revocation of confirmation via Rule 9024, nothing precludes courts from addressing issues such as clerical errors through that rule without violating Section 1330. *Id.* at117 fn.6.

The court also discounted the creditor's other arguments, including that Congress was using Section 1330(a) to "reinforce" that fraud was one of the bases for revoking confirmation; that the phrase "if such order was procured by fraud" was merely "permissive" in nature as opposed to "exclusive"; and that the same "permissive nature" could be read with regard to the similar Sections 1144 and 1230, which address revocation of confirmation in Chapter 11 and Chapter 12 cases. *Id*. at 117-18. The court additionally relied on the amendments made to the Bankruptcy Code in 1984, and in particular, to Section 1144, and read the amendments as clarifying the original intent of Congress to keep Sections 1144, 1230, and 1330 uniform in meaning and application. *Id*. at 118.

The Third Circuit also found support in precedent case law, specifically with the

45

court's previous decision in *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989), where the court also

held that a confirmation order could only be revoked on the basis of fraud.  The court also

cites in support *In re Pence*, 905 F.2d 1107 (7th Cir. 1990) (stating in dicta that Section 1330

lists fraud as the only basis for revoking confirmation); *United States v. Hochman* (*In re

Hochman*), 853 F.2d 1547 (11th Cir. 1988) (per curiam), *aff'g sub nom. United States v. Lee*,

89 B.R. 250 (N.D. Ga. 1987); and *Lester Mobile Home Sales, Inc. v. Woods* (*In re Woods*),

130 B.R. 204, 206 (W.D. Va. 1990) (discussing the res judicata effect of confirmation orders

with regard to a motion for relief from stay, which was filed post-confirmation and denied,

and noting in dicta that the order "may be avoided only by a revocation of the order pursuant

to section 1330 of the Code, which requires a showing of fraud in the procurement of the

order"), as examples of other courts subscribing to the Third Circuit's interpretation of

Section 1330.  *In re Fesq*, 153 F.3d at 119.[11]  Finally, the Court relied upon the overriding

principle of finality of judgments specifically with regard to orders confirming Chapter 13

plans as further cause to read Section 1330 as both a temporal and substantive limitation to

the revocation of confirmation orders.  *Id*. at 120.

     The dissenting Circuit Judge rejected the majority's opinion on the basis that the

---

[11]  The *Fesq* Court also cited *Young v. Internal Revenue Serv.* (*In re Young*), 132 B.R.
395 (S.D. Ind. 1990); *United States v. Edmonston*, 99 B.R. 995 (E.D. Cal. 1989); *Rakestraw v.
Hood* (*In re Hood*), 211 B.R. 334 (Bankr. W.D. Ark. 1997); *United States v. Trembath* (*In re
Trembath*), 205 B.R. 909 (Bankr. N.D. Ill. 1997); *Laurel Fed. Credit Union v. Hoppel* (*In re
Hoppel*), 203 B.R. 730 (Bankr. D. Mont. 1997); *In re Puckett*, 193 B.R. 842 (Bankr. N.D. Ill.
1996); *In re Klus*, 173 B.R. 51 (Bankr. D. Conn. 1994); *In re Duke*, 153 B.R. 913 (Bankr. N.D.
Ala. 1993); *In re Walker*, 114 B.R. 847 (Bankr. N.D.N.Y. 1990); and *In re Scott*, 77 B.R. 636
(Bankr. N.D. Ohio 1987), as examples of cases agreeing with their interpretation of Section
1330.  *In re Fesq*, 153 F.3d at 119.

statutory sections addressing revocation of confirmation (Sections 1144, 1230, and 1330) contain no language to indicate that they were drafted with the intent to foreclose additional grounds upon which challenges to confirmation may be made, but instead were devised to set a specific time deadline with respect to post-confirmation challenges on the basis of fraud. Judge Stapleton points out that Rule 9024 serves to supplement Section 1330(a) with additional grounds upon which review of a confirmation order may be had. In this vein, he reasons that Rule 9024 incorporates the essential element of time limitation for challenges to confirmation beyond fraud. *Id*. at 121 (Stapleton, J., dissenting).

Judge Stapleton also points to the legislative history surrounding the Bankruptcy Code amendments made in 1984, highlighting that, prior to that time, Sections 1144, 1230, and 1330 all contained the phrase "if such order was procured by fraud." However, the Bankruptcy Amendments and Federal Judgeship Act of 1984 amended that phrase in Section 1144 only to read "if and only if such order was procured by fraud," thus signaling to Judge Stapleton that Congress only intended to restrict the grounds for revoking confirmation in cases under Chapter 11. *Id.* at 121 fn.11 (Stapleton, J., dissenting).

Judge Stapleton also discounts what he refers to as "broad statements about the concerns of finality in confirmed bankruptcy plans" made in *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989). He posits that the statements made therein must be taken within the context of the facts of that case, which included a miscommunication between the debtors and the creditor with regard to the continuance of the confirmation hearing. As the bankruptcy court

found no evidence of fraud, the motion to revoke confirmation was denied.  Judge Stapleton

urges that the holding in *Szostek* should not be read as precluding additional bases for the

revocation of confirmation.  Rather, the *Szostek* decision was correct in denying the motion

to revoke confirmation because the principle of finality should control to prevent a creditor

from receiving multiple opportunities to present its argument when those arguments should

have been presented at the time of the confirmation hearing.  *In re Fesq*, 153 F.3d at 122

(Stapleton, J., dissenting).

Finally, based upon his reading of a case decided by the Ninth Circuit Court of

Appeals and that Court's analysis of another statutory provision, Section 1328 and its

attendant legislative history, Judge Stapleton asserts that "Congress did not intend to give

confirmation orders special treatment by making them impervious to challenge save on

grounds of fraud."  *Id*. at 123 (Stapleton, J., dissenting) (discussing *Cisneros v. United States*

(*In re Cisneros*), 994 F.2d 1462 (9th Cir. 1993)).

The Tenth Circuit Bankruptcy Appellate Panel has also addressed the question of

whether Section 1330 precludes additional challenges to confirmation on bases other than

fraud under Rule 60.  *See Mason v. Young* (*In re Young*), 237 B.R. 791 (B.A.P. 10th Cir.

1999), *aff'd on other grounds*, 237 F.3d 1168 (10th Cir. 2001).  In *In re Young*, the judgment

creditor appealed an order denying his motion for new trial, in which he sought to have the

confirmation order vacated and a new trial held on confirmation.  The debtor originally filed

his case under Chapter 7, and the judgment creditor filed a complaint seeking determination

48

of dischargeability of debt under Section 523(a)(6).  After receiving a Chapter 7 discharge of all other dischargeable debts over the judgment creditor's opposition, the debtor moved to convert his case to one under Chapter 13.  *Id*. at 794, 796.  Although the creditor contested the conversion because his adversary proceeding was still pending, the Court found that the debtor had an absolute right to convert his case.  The creditor did not appeal the conversion order.  *Id*. at 796.

The judgment creditor then objected to confirmation of the original Chapter 13 plan and moved to have the bankruptcy case dismissed.  Confirmation of the original plan was denied on the basis that the plan did not satisfy the good faith test as applied in the Tenth Circuit.  *Id*. at 796-97.  The second Chapter 13 plan was confirmed, and with regard to that plan, the Court found that the issues surrounding good faith were resolved.  The judgment creditor did not object to this plan, but after confirmation, appealed the confirmation order.  *Id*. at 797.  After the appeal, amendments were made to an Oklahoma state law which allowed the state agency, for which another defendant to the suit in which the creditor received his judgment against the debtor formerly worked, to indemnify that third party defendant for the award against him.  On the basis of changed circumstances, the judgment creditor moved for a new trial in the bankruptcy court on the issue of confirmation of the second Chapter 13 plan and also requested that confirmation be vacated.  The bankruptcy court denied the motion as untimely under Section 1330.  The order denying the motion for a new trial was appealed.  *Id*.

The Bankruptcy Appellate Panel held that Section 1330 limits motions for revocation of a confirmation order solely to motions brought on the basis of fraud.  While the court here faced the additional issue that the action to revoke confirmation was filed beyond the 180-day time frame,[12] the court also provides helpful insight as to how to proceed in cases where revocation of confirmation is sought.  The court focused on the fact that "[h]owever [the judgment creditor] couches the terms of his Motion, this Motion is in fact a request to vacate or revoke the Confirmation Order, and is therefore governed by Section 1330."  *Id.* at 801.  The court then specifically examined the issue of whether Section 1330 is both a substantive and temporal limitation on a motion to revoke a confirmation order, stating that such issue was a matter of first impression in the Tenth Circuit.  The court cited with favor the opinion by the Third Circuit Court of Appeals in *Branchburg Plaza Associates, L.P. v. Fesq* (*In re Fesq*), 153 F.3d 113 (3d Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999).  *In re Young*, 237 B.R. at 801.

The Tenth Circuit Bankruptcy Appellate Panel agreed with the reasoning of the Third Circuit, noting that although the motion was brought under Rule 60(b), its substance belied the fact that it was basically a motion requesting revocation of confirmation, and found that both Section 1330 and the phrasing of Rule 60 indicate that Section 1330 provides that the only basis to revoke confirmation would be an allegation of fraud and that such action must

---

[12]  It is appropriate to note that the issue of whether Johnson's Complaint to Revoke Confirmation of Stemple's Fourth Amended Chapter 13 Plan was timely filed is not present in the instant matter, as his Complaint was filed within the prescribed 180-day time period.

be brought within 180 days. *Id*. at 802. The court discounted the argument by the judgment creditor that Rule 60 only sought to foreclose revocations on the basis of fraud from being brought beyond the 180-day window and that Rule 9024 was meant to incorporate the grounds for relief found in Rule 60 into the Bankruptcy Code. In doing so, the court stated, "as *Fesq* noted, . . . Rule 9024 was promulgated solely to give effect to the substantive provisions of the Bankruptcy Code. The Bankruptcy Code defines substantive rights, while the Bankruptcy Rules delineate the process for protecting those rights. Rule 9024 cannot grant a substantive right foreclosed by Section 1330(a)." *Id*. (citations omitted).

In further support of this conclusion, the court stated that Section 1329, which provides for plan modification, effectively addresses reconsideration of confirmation in the event of newly discovered evidence, and thus, "[i]mporting Rule 60(b) motions for relief based upon new evidence via Rule 9024 would be redundant." *Id*. Finally, the court reiterated that the policies of finality, a fresh start, and prompt case administration also support their finding. *Id*. at 803.

At least two other courts have relied on the reasoning of the Tenth Circuit Bankruptcy Appellate Panel. The Bankruptcy Court for the District of Idaho, in *In re Matthews*, No. 03-00998, 2004 WL 4960377 (Bankr. D. Idaho Apr. 15, 2004), cited the *In re Young* decision for the proposition that Section 1330, not Rule 60, provided the exclusive basis to seek revocation of a confirmation order entered in a Chapter 13 case both in terms of substance and time limitations. *Id*. at *6.

51

Citing both *In re Young* and *In re Fesq* with favor is *Educational Credit Management Corp. v. Robinson* (*In re Robinson*), 293 B.R. 59 (Bankr. D. Or. 2002).  In dismissing the complaint to revoke discharge for failure of the creditor to allege any fraud or due process concerns, the Court concluded that "[i]n the final analysis, Section 1330(a) must be construed as Congress' acknowledgment that confirmation orders are indeed different than other orders. 'Any other result does harm to the finality normally accorded confirmation orders and specifically provided for by Congress in § 1327(a).'"  *Id*. at 65 (quoting *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595, 599 (Bankr. D. Or. 1997)).

While the court in *In re Bulson*, 327 B.R. 830 (Bankr. W.D. Mich. 2005), utilized a different test, used by a minority of courts, to determine whether confirmation was procured by fraud under Section 1330, the court nevertheless adopted the reasoning of the courts in both the *Fesq* and *Young* cases that confirmation may be revoked only on the basis of fraud. *Id*. at 848.  Although *Bulson* was before the court on a motion brought under Federal Rule of Bankruptcy Procedure 9023 (applying Rule 59 of the Federal Rules of Civil Procedure to proceedings in bankruptcy) by a creditor seeking reconsideration of the court's decision to confirm a Chapter 13 plan, the court found the reasoning in *Fesq* and *Young* to be compelling and extended its applicability to that case.  As such, the *Bulson* court held that Section 1330(a) also limits a Rule 9023(e) motion to set aside a confirmation order to only those instances where the confirmation order was procured by fraud.  *Id*.  The court further held that a motion to reconsider under Rule 9023 cannot substitute for a request to revoke

confirmation under Section 1330 procedurally since Federal Rule of Bankruptcy Procedure 7001(5) clearly states that an action to revoke confirmation must be brought as an adversary proceeding. *Id*. at 849.[13]

In another, earlier decision by the Bankruptcy Court for the Western District of Michigan, the court recognized the conclusion reached in *In re Young* as correct, but declined to extend the conclusion to cases where due process concerns were at issue. *In re Hudson*, 260 B.R. 421 (Bankr. W.D. Mich. 2001). In so finding, the court reiterated that Section 1330 trumps Rule 9024 by virtue of 28 U.S.C. § 2075, which provides that "a rule 'shall not abridge, enlarge, or modify any substantive right.'" *Id*. at 444 (quoting *In re Fesq*, 153 F.3d at 116). However, the court went on to explain that, while statutes trump rules, constitutional requirements likewise trump any conflicting statute. *Id*. (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 388 (1798)). Thus, the *Hudson* court declined to foreclose Rule 9024 as an avenue to revisit confirmation when due process or other constitutional concerns arise. *Id*.

Also deserving mention here is another section of the Bankruptcy Code which is substantially similar to Section 1330, Section 1144, which provides for the revocation of confirmation of a Chapter 11 Plan of reorganization. "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice

---

[13] The *Bulson* court also employed its power under Section 105 to *sua sponte* examine the issue of whether the confirmation order at issue should be revoked because of fraud on the court. The bankruptcy court did not utilize the factors examined by a majority of courts regarding fraud, as discussed above, but instead adopted the test employed by the 6th Circuit. *In re Bulson*, 327 B.R. at 833, 849-51.

and a hearing, the court may revoke such order if and only if such order was procured by

fraud." 11 U.S.C. § 1144. Like those cases addressing Section 1330, the majority of the

cases addressing Section 1144 also hold that a finding of fraud under Section 1144 provides

the sole basis to revoke confirmation, thus precluding such action under Rule 60. *See In re*

*Longardner & Assocs.*, 855 F.2d 455, 460 (7th Cir. 1988) (Section 1144 provides the sole

basis to revoke confirmation, and such revocation must be moved for within 180 days of

confirmation); *Official Comm. of Unsecured Creditors v. Michelson* (*In re Michelson*), 141

B.R. 715, 723 and fn.28 (Bankr. E.D. Ca. 1992) (citing *In re Longardner & Assocs.*, 855

F.2d at 460; and *In re Newport Harbor Assocs.*, 589 F.2d 20 (1st Cir. 1978)) (agreeing with

*In re Longardner & Associates* and stating in a footnote that nothing appears to preclude the

court from acting beyond the 180 days to correct clerical errors or to grant relief by means

other than revocation of confirmation).

### D.  Analysis of the Motions to Dismiss

The Motions to Dismiss by Stemple and the Trustee make two primary arguments.

First, they argue that the doctrines of collateral estoppel and/or res judicata bar Johnson from

raising the issue of the alleged debt owed to Ms. McCotter at this stage of the proceedings.

They argue that Johnson has been on notice of a possible debt to Ms. McCotter since the

filing of the case and that he had more than ample opportunity to explore any issues

surrounding that debt. Specifically, Stemple points to the numerous examinations Johnson

conducted pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure; the

numerous motions and subsequent hearings before this Court; and the submission of a large

number of documents to Johnson pursuant to several subpoenas.  Both Stemple and the

Trustee raise the notion that Johnson could have exercised his right to subpoena Ms.

McCotter for the May 2, 2006, confirmation hearing but failed to do so, and is now

attempting to relitigate issues raised at that hearing regarding eligibility due to his ill-

preparedness for the previous hearing.  In essence, they argue that the issue of whether

Stemple owes a debt to Ms. McCotter that is raised in the Complaint now before this Court

could have been raised on May 2, 2006, but was not.  Thus, Johnson is bound by this Court's

ruling that Stemple is eligible to be a debtor under Chapter 13 of the Bankruptcy Code and

the Court's confirmation of Stemple's Fourth Amended Chapter 13 Plan.  Stemple and the

Trustee urge this Court to do  as other courts outside of this Circuit have done and reject the

use of Section 1330 to overturn confirmation because the issues Johnson is raising at present

could have been raised at the confirmation hearing.

Johnson argues in response that, while the debt was disclosed by Stemple in his

original schedules, Stemple did in fact alter the designation of the McCotter debt on his

amended schedules to add the notations of contingent and disputed, whereas he originally

designated the debt as only unliquidated.  Further, Johnson takes issue with Stemple's failure

to fully and completely answer specific questions posed to him regarding the McCotter debt

during a deposition conducted in April, 2006.  Johnson contends that he relied not only on

the answers that were given during that deposition, but also on Mr. and Mrs. Stemple's

testimony at the confirmation hearing to be truthful, and subsequently learned that it was not.

Johnson argues that the Court also relied on Stemple's untruthful testimony in its

determination to confirm Stemple's plan when, had the true nature of the McCotter debt been

known, Stemple's plan would not have been confirmed because the Court would have found

that Stemple was not eligible for relief under Chapter 13.  Therefore, Johnson argues that he

should be permitted to pursue his claim at this stage since to do otherwise would place an

extreme burden upon creditors during the confirmation process to investigate all aspects of

a debtor's financial obligations to allow them to preempt any possible perjury.  Johnson

asserts that the reliance by Stemple and the Trustee on the decision of *Midlantic National

Bank v. Kouterick* (*In re Kouterick*), 161 B.R. 755 (Bankr. D.N.J. 1993), is wholly misplaced,

as he was not aware that the statements made by Stemple at the May 2, 2006, confirmation

hearing were false until post-confirmation, and that the fraud itself actually occurred at the

confirmation hearing, thus making it impossible to raise the issue until now.

In reply, Stemple argues that the issue of the McCotter debt meets the requirements

for collateral estoppel, as it was raised and litigated in a previous proceeding and that the

Court made a ruling on this issue which was essential to the outcome at the prior hearing.

Johnson, he contends, had several opportunities to explore the nature of the McCotter debt

in depth and should not now be permitted an additional chance to do so.  Citing to Federal

Rule of Civil Procedure 60(b)(2), Stemple asserts, in his reply and for the first time, that

Johnson's Complaint fails to satisfy the requirement of that Rule that the moving party show

56

newly discovered evidence that could not have previously been discovered prior to the expiration of the time limit for moving for a new trial. Finally, Stemple asserts that the claims made by Johnson in the instant Complaint are substantially similar to those made in previous motions and on that basis, the Complaint should be dismissed with prejudice.

The Trustee also filed a reply to Johnson's response. He urges that Johnson should have undertaken the discovery that he now wishes to initiate during the months prior to the May 2, 2006, confirmation hearing, given that Johnson was afforded more than sufficient notice of the debt. The Trustee posits that Johnson's allegations would have been more properly placed as additional objections to confirmation instead of an action to revoke confirmation after the fact, and that couching such allegations as fraud should not now allow Johnson an extra opportunity to raise the issues once again.

The second argument, raised only by the Trustee, is that even if the doctrines of collateral estoppel and/or res judicata do not apply, Johnson's Complaint should still be dismissed because he cannot sustain his burden of proof under Section 1330 to show that Stemple procured his confirmation by fraud. The Trustee points to the affidavits allegedly executed by Ms. McCotter as insufficient to establish by clear and convincing evidence that Stemple procured confirmation by fraud. The Trustee also points to Ms. McCotter's lack of participation in Stemple's bankruptcy, specifically, her lack of objection to any of the plans proposed by Stemple; her failure to timely file a proof of claim; and the fact that the Motion to Allow Late Filing of Claim that she did eventually file, which cited only a lack of

knowledge of the need to file a proof of claim and no claim of her unawareness of the filing of Stemple's bankruptcy, was later withdrawn.

Johnson's response to this argument, simply put, is that the litigation of his Complaint is in the very early stages, and that the Court has suspended further discovery in this matter pending the outcome regarding the Motions to Dismiss.  Thus, to conclude that he cannot meet his burden of proof with regard to whether Stemple procured confirmation by fraud would be premature at best.

The Trustee replies that Johnson is unable to establish the first requirement for fraud, that is, that he cannot prove that the debt to Ms. McCotter was in existence at the time Stemple filed bankruptcy, and thus, without satisfying the first element, would logically fail to meet the remainder of the requirements.  Assuming that Johnson could prove the existence of the debt, the Trustee contends that Johnson cannot show by clear and convincing evidence, or even by the lesser standard of preponderance of the evidence, that fraud was committed.

Beginning with the arguments made by both Stemple and the Trustee that the doctrines of collateral estoppel and res judicata should be triggered so as to bar Johnson from proceeding to litigate his Complaint for Revocation of Confirmation, the Court must disagree.  The application of the doctrines of res judicata and collateral estoppel in the bankruptcy context is crucial to the interest of achieving finality of judgments, for all of the reasons outlined in the Court's discussion of precedential case law above, including the avoidance of multiple lawsuits on the same issue; the conservation of the Court's resources;

58

and to encourage reliance on the adjudication process.  *See Allen v. McCurry*, 449 U.S. 90,

94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  In particular, the

policies espoused in these doctrines, as well as the statutory mandates of Section 1327 of the

Bankruptcy Code, are paramount to the finality of confirmation orders, such that debtors and

creditors are bound by the confirmed plan as well as by the Court's decisions regarding any

issues litigated during the confirmation process.  *First Union Commercial Corp. v. Nelson,*

*Mullins, Riley and Scarborough* (*In re Varat Enters.*), 81 F.3d 1310, 1315 (4th Cir. 1996);

*Piedmont Trust Bank v. Linkous* (*In re Linkous*), 990 F.2d 160, 162 (4th Cir. 1993); *In re*

*Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989).  Despite the overriding preference for finality

of judgments, this Court finds that the overwhelming case law on the topic of revocation of

confirmation, as outlined above, mandates that, if confirmation is procured by fraud, and the

complaint to revoke confirmation on that basis is timely filed, then the legal doctrines

favoring finality of judgments will not serve as a shield so as to prevent the litigation of the

issue of whether the debtor procured confirmation by fraud pursuant to Section 1330.

The question before the Court at this stage of the proceedings is not whether Stemple

owed a debt to Ms. McCotter at the time of filing.  Rather, the ultimate issue of the current

proceeding is whether Stemple, in achieving confirmation of his Fourth Amended Chapter

13 Plan, did so by engaging in fraud such that this Court should revoke confirmation.  It is

certainly a close question from the Court's standpoint as to whether Johnson could have

raised the issues in his Complaint at the confirmation hearing with regard to Stemple's

eligibility to be a debtor under Chapter 13 of the Bankruptcy Code.  It is conceivable that had

59

Johnson undertaken additional investigation of the circumstances of the McCotter debt prior to the confirmation hearing and the hearing on the Motion to Dismiss, perhaps the alleged falsity of the Stemples' testimony could have been discovered. However, under the standard by which this Court must weigh the Motions to Dismiss, the Court must take as true Johnson's allegations, and construe the claims in the light most favorable to him, as he is the non-moving party. It follows, then, that the Court must take as true, only for the purposes of this decision regarding the Motions to Dismiss Complaint, that Johnson could not have raised the issues set forth in his Complaint due to lack of knowledge on his part and that his lack of diligence during pre-confirmation proceedings did not contribute to such lack of knowledge such that he could or should have raised the issues now before the Court during the confirmation hearing held on May 2, 2006. On that basis, then, the Court finds that the Motions to Dismiss filed by Stemple and the Trustee must be denied, as the doctrines of res judicata and collateral estoppel cannot serve to bar litigation of Johnson's Complaint.

Likewise, the Court reaches the same conclusion with regard to the portion of the Motion to Dismiss by the Trustee that Johnson's Complaint should be dismissed because he cannot meet his burden of proof as to the elements necessary to demonstrate that Stemple procured confirmation by fraud. The Court agrees with Johnson that discovery in this matter has been stayed pending the Court's decision on the Motions to Dismiss. Whether or not fraud was committed by Stemple in procuring confirmation is a question of fact that the Court can resolve only after the parties have conducted discovery and the Court has

conducted a full evidentiary trial on the merits of the case, and the Court cannot say at this juncture that there is no set of facts that Johnson could prove such that the Motions to Dismiss should be granted.

The issues before this Court, particularly with regard to the procedural history of this case, are distinguishable from the issues that were faced by the *Kouterick* and *Ritacco* courts. Specifically, in *Midlantic National Bank v. Kouterick* (*In re Kouterick*), 161 B.R. 755 (Bankr. D.N.J. 1993), Midlantic National Bank, which filed the complaint giving rise to that case, had failed to object to confirmation of the debtors' Chapter 13 Plan. In their Complaint, Midlantic argued that confirmation was obtained by fraud because the debtors understated the value of their real property. Midlantic argued that it did not object to confirmation because only the bank, and not their attorneys, were served with the notice of commencement of the Chapter 13 case. *Id*. at 757. The *Kouterick* court ruled that because Midlantic did not object to confirmation, it could not be permitted to use what would have been the basis for their objection to confirmation as the basis for claiming that confirmation was procured by fraud and should be revoked pursuant to Section 1330. Instead, if a creditor knows of a basis for challenging confirmation, that creditor must participate in the confirmation process by filing an objection to confirmation. *Id*. at 760.

A similar situation faced the court in *Estate of Bright v. Ritacco* (*In re Ritacco*), 210 B.R. 595 (Bankr. D. Or. 1997). In that case, unsecured creditors were aware of the debtor's alleged fraud at the time of confirmation but failed to object on that basis. Thus, the court

ruled that res judicata barred them from seeking the revocation of confirmation based upon

that fraud.  *Id*. at 598.

The instant matter, unlike *Kouterick* and *Ritacco*, does not involve a creditor who

failed to participate in the confirmation process.  Again, it is arguable as to when Johnson

was aware of the fraud and whether he should have been aware of the fraud prior to or at the

very least during the confirmation hearing.  Those are questions that are best reserved after

a trial on the merits as well.

The Court would be remiss if it did not briefly discuss the pending matter in relation

to its discussion regarding motions to revoke confirmation under Rule 60.  To be certain, the

question before the Court at this juncture is not whether Section 1330 precludes any

additional challenges to confirmation under Rule 60 when the basis for such challenge is

fraud.  However, the Court believes the reasoning espoused by Judge Mitchell in the *In re*

*Joseph* case, as well as by the majority in *In re Fesq* and the Bankruptcy Appellate Panel in

*In re Young*, to be the sound and logical approach in illustrating that Congress intended

Section 1330 to serve not only as a time limitation regarding actions to revoke confirmation,

but as a substantive limitation as well.  As a result, the Court finds that the analysis in the

instant matter with regard to allegations of fraud in the confirmation process are properly

performed under the guise of Section 1330 of the Bankruptcy Code and not under Rule 9024

of the Federal Rules of Bankruptcy Procedure.  Finally, the Court finds that the implicit

argument by Stemple in his Reply to Johnson's Response to Motions to Dismiss Complaint,

that Rule 60(b) controls the analysis of the instant matter, or would serve as an alternative basis for analysis, is not well pled and thus, the Court makes no ruling as to that particular argument.

It is important that, proceeding forward in the instant matter, Johnson, the Stemples, and the Trustee recognize what this current proceeding is and is not.  It is <u>not</u> an open-ended opportunity to re-litigate the status and amount of the McCotter debt with Johnson now having an opportunity to provide additional evidence he was unable or unavailing to adduce at the hearing on confirmation and the original Motion to Dismiss.  Rather, the issue in the instant Complaint is whether Stemple procured confirmation of his Fourth Amended Plan through fraud and, more specifically, whether the Stemples committed perjury when they gave their earlier testimony concerning the McCotter debt.  It is likely, based upon the Court's experience in proof of intent, if Johnson is successful in this endeavor, that he will prove his allegations of fraud on the part of the Stemples through circumstantial evidence of the nature and extent of the McCotter debt.  However, the focus at this stage of these most lengthy proceedings is important but exceedingly narrow—is there clear and convincing proof that the testimony of the Stemples concerning the McCotter debt was materially false and known by the Stemples to be false or made without belief in the truth of the testimony or with reckless disregard for the truth?[14]  The burden of such a showing is a heavy one, but,

---

[14]  These principal elements must be proven by clear and convincing evidence, along with the other three elements set forth in the case law.  *See* pp. 36-37, *supra*, for a discussion of the elements that must be proven to establish that confirmation was procured by fraud.

at this juncture, this Court cannot say there is no way that Johnson may prevail.

To summarize, then, this Court cannot find that there is no set of facts that even if proven, would preclude the relief prayed for in Johnson's Complaint, and that his Complaint has not failed to state a claim upon which relief may be granted. Thus, the Court finds that the Motions to Dismiss should be denied, and that the matter should proceed to trial.

A separate order will issue.

The Clerk shall deliver copies of this Opinion to John M. Barrett, Counsel for the Plaintiff; John E. Bedi, Counsel for the Defendant; and Warren A. Uthe, Jr., Counsel for Chapter 13 Trustee George W. Neal.

**Entered this 14th day of February, 2007, at Norfolk, Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket
FEB 1 4 2007

64